ROBOTIC VISION SYSTEMS, INC., Plaintiff–Appellee,

v.

VIEW ENGINEERING, INC., Defendant–Appellant.

No. 98–1477.

United States Court of Appeals, Federal Circuit.

Sept. 3, 1999.

Albert J. Breneisen, Kenyon & Kenyon, New York, New York, argued, for plaintiff-appellee. Of counsel on the brief were Edward J. Handler, III, Robert F. Perry, and Joseph R. Palmieri.

Ernie L. Brooks, Brooks & Kushman, Southfield, Michigan, argued, for the defendant-appellant. With him on the brief was Frank A. Angileri.

Before CLEVENGER, BRYSON and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

## DECISION

View Engineering, Inc. ("View") appeals the July 1, 1998 decision of the United States District Court for the Central District of California, Docket 96–CV–2288, finding that View had infringed U.S. Patent No. 5,465,152 ("the '152 patent"), issued to the Robotic Vision Systems, Inc. ("RVSI"), and holding the patent to be not invalid for obviousness under 35 U.S.C. § 103. Because the trial court did not err in its determinations, we affirm.

## BACKGROUND

Robotic Vision Systems, Inc. ("RVSI") manufactures and sells machines to perform inspections of integrated circuit devices. Until June 1998, View Engineering, Inc. ("View") also manufactured and sold inspection equipment, in particular, its Model 880 inspection machine. Although RVSI and View do not manufacture chips themselves, they sell equipment for use by device manufacturers.

United States Patent No. 5,465,152 issued to RVSI on November 7, 1995. The patent is directed to a "Method for Coplanarity Inspection of Package or Substrate Warpage for Ball Grid Arrays, Column Arrays, and Similar Structures." Ball grid arrays ("BGAs") are integrated circuit devices that have an array of solder balls on one face. Each ball sits on a metal pad, known as a "signal pad," which in turn sits on a "substrate" and connects the ball to the internal integrated circuitry. "Coplanarity" refers to the degree to which a set of points are in the same plane, i.e., how "flat" something is. At the time of the invention, ball-top coplanarity measurements[1] were known in the prior

---

1. Ball-top coplanarity measurements involve measuring the heights of the tops of the solder balls on a BGA, fitting a least means square plane to the height data, and calculating the deviations of the individual ball-tops from the fitted plane.

art because it is important for device manufacturers to know the coplanarity of the solder balls to make sure that the BGA devices will mate properly with other devices.

The '152 patent discloses a method for using incident laser radiation to measure the coplanarity of a substrate. The measurements are not done on the substrate directly or on the ball-tops, but are done by using "index pads" on the substrate as targets to perform the measurements.[2] According to the written description, these index pads can be separately manufactured pads used only to measure substrate coplanarity, or the index pads can be selected from signal pads that may or may not eventually be used as BGA sites. The only independent claim in the '152 patent is claim 1, which reads as follows:

1. A method for determining coplanarity of substrates for ball grid array, column grid array, and similar surface mount integrated circuit chips, using 3–D optical sensing means, comprising the steps of:

[1] *providing* opaque fiducials as index pads

[2] where the heights of said index pads are *correlated* with signal pad heights in a neighborhood about said index pads;

[3] said index pads being opaque to incident radiation from said 3–D optical sensing means;

[4] reflecting by said index pads sufficient radiation allow height measurement by said 3–D optical sensing means;

[5] *disposing* said index pads in a prearranged pattern over a domain of array signal pads;

[6] *restricting* said index pads to a predetermined range of heights;

[7] measuring the heights of each of at least three said index pads at said index pad coordinate locations;

[8] suitably fitting a preselected surface shape to the index pad height and coordinate location data;

[9] and calculating the difference in height between each index pad and the preselected surface shape evaluated at the index pad location.

(paragraphing and emphasis added). Dependent claims 3 and 12 are also at issue. They read as follows:

3. A method as defined in claim 1, wherein said index pads are metallic and opaque.

12. A method as described in claim 1, in which the index pads are identical with the signal pads rather than separately fabricated elements intended solely for use as fiducial pads, which index pads are located at signal pad sites occupied by array elements such as bga balls, columns or other; and determining coplanarity prior to deposition of grid array elements.

The written description of the '152 patent discloses three examples as preferred embodiments of the claimed method:

There must be a close correlation between the heights of the index pads and the signal pads since the objective of having the index pads is to provide a means of inferring the heights of the signal pads. This can be accomplished by properly designing the fabrication process. *One means of accomplishing this is to use unused signal pads as index pads. A second means is to construct index pads by plating additional material on existing signal pads using photoresist masking techniques to avoid plating signal pads which are not dedicated to indexing.* . . .

There are innumerable ways of creating and disposing the index pads over the substrate only several of which will be detailed here. However, other embodiments which generally follow the

---

2. RVSI asserts that the use of an index pad is important because many substrates are at least partially transparent to laser radiation, making direct substrate measurements inaccurate.

concepts outlined here are considered to be covered by this disclosure.

Three approaches serve to illustrate the method. *In the first two cases, the index pads are selected from the totality of pad on the substrate. In third case, the index pads are fabricated separately from the signal pads.* In case one, the index pads are selected from the total number of available pads and dedicated for measurement purposes. That is, they are empty signal pads. They are distributed over the substrate surface so that their height provides a measure of the variations in signal pad coplanarity.

'152 Patent, col. 5, ll. 30–57 (emphasis added). Therefore, the written description discloses the use of signal pads as index pads, and index pads that are separately fabricated.

RVSI filed suit against View alleging that View infringed the method claims of the '152 patent through the View Model 880 inspection machine. The 880 machine measures BGA coplanarity by using bare signal pads as laser targets. View moved for summary judgment of noninfringement, arguing that properly interpreted, the claim required the *manufacture* or *fabrication* of the index pads along with their measurement. The court, on summary judgment, rejected this argument and held that the language of claim 1 – specifically the terms "providing," "correlating," "disposing," and "restricting" – did not require separate manufacture of the index pads, and encompassed the selection of pre-existing signal pads as index pads for measurement purposes. A bench trial followed; the court reiterated its summary judgment claim construction and found the View Model 880 accused device to infringe claims 1, 3, and 12.

In its opinion, the court stated that:

Properly interpreted, the '152 patent requires that index pads, disposed in a particular arrangement, be provided for measurement, and that the heights of these index pads should be correlated with that of signal pads and restricted to a specific range of heights. The selec-

tion of index pads for measurement can satisfy these requirements. Claim 12 requires identical signal and index pads; Claim 1 permits either separate index pads and signal pads or identical signal pads/index pads.

Slip op. at 8.

The court based this interpretation on the claim language and on the examples disclosed in the written description, which described embodiments of the claimed method using both separately manufactured index pads and index pads that were chosen from pre-existing signal pads. Based on this interpretation, the court found the Model 880 device to infringe the '152 patent.

The court also addressed View's obviousness defense, which it rejected. The court found that one of ordinary skill in the art would be either: (1) a person with a B.S. degree in engineering, mathematics, or a technical discipline; (2) an applications engineer; or (3) a person with knowledge based on experience equivalent to (1) or (2). The court further found that the date of the invention was no later than January 31, 1994. Based on its factual findings, including those concerning objective evidence of nonobviousness, the court held that the invention of the '152 patent would not have been obvious to one of ordinary skill in the art. View now appeals the court's finding of infringement and its holding of non-obviousness.

## DISCUSSION

### I. Claim Construction and Infringement

Determining whether a patent claim has been infringed involves two steps: (1) claim construction to determine the scope and meaning of the claims asserted to be infringed, followed by (2) a determination of whether the properly construed claim encompasses the accused method. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384,

134 L.Ed.2d 577 (1996). Claim construction is a matter of law that we review *de novo*. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455, 46 USPQ2d 1169, 1173 (Fed.Cir.1998) (en banc). Whether a claim encompasses an accused method, either literally or under the doctrine of equivalents, is a question of fact that we review for clear error when tried to the court. *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1125, 227 USPQ 577, 589 (Fed.Cir.1985) (en banc).

View does not dispute that it performs the measuring steps of the method recited in claim 1 of the '152 patent – elements 7, 8 and 9 – however, View argues that it does not perform what it calls the fabrication or manufacturing steps of the claim – elements 1 through 6. View states that its Model 880 machine does not "provide," "correlate," "dispose" or "restrict" the pads in any way, it merely selects device signal pads as measurement targets. View contends, therefore, that the accused method cannot infringe the '152 patent because the accused method does not perform all the necessary steps. View argues that the district court erred in its claim construction because the court did not base its claim construction on the language of the claims. View contends that the district court ignored the ordinary and customary meanings of terms "provide," "correlate," "dispose," "restrict," and "select"[3] and instead the court looked to the examples provided in the written description of the '152 patent to interpret the claim. View asserts that the district court's reliance on all three examples disclosed in the written description to interpret claim 1 is incorrect. View argues that example 3, in which the index pads are separately manufactured, is actually the preferred embodiment of the claimed invention and the first two examples, in which index pads are selected from the signal pads, are not embodiments of the invention disclosed in claim 1.

View further contends that as construed by the district court, the providing, correlating, disposing and restricting steps have been read out of claim 1. The "providing" element was read out of the claim by interpreting this limitation to cover selecting signal pads for measurement. The correlating step was also eliminated by the district court; correlation, according to View, requires comparing two separate things with each other whereas the district court's interpretation allows something to be correlated with itself. View also claims that the "disposing" step has also been reduced to a non-limitation by the district court.

Finally, View argues that the plain language of claim 12 also indicates that claim 1 was not meant to cover an embodiment in which the index pads were not separately manufactured. Claim 12 reads as follows: "[a] method as described in claim 1, in which the index pads are identical with the signal pads *rather than* separately fabricated elements intended solely for use as fiducial pads...." View contends that the use of the phrase "rather than" indicates that claim 12 is to be distinguished from claim 1, in which the index pads are "separately fabricated elements intended solely for use as fiducial pads." Therefore, claim 1 cannot encompass the method in which index pads are chosen from signal pads.

RVSI argues that based on the intrinsic evidence – the claims themselves, the writ-

---

**3.** View submitted the following dictionary definitions of the disputed terms:

"Provide".... To supply or furnish for use; to yield, afford.... To furnish or supply (a person, etc.) with something.

"Correlate".... To have a mutual relation.

"Dispose".... To place (things) at proper distances apart and in proper positions with regard to each other, to place suitably, adjust to place or arrange in a particular order.

"Restrict".... To confine (some person or thing) to or within certain limits; to limit or bound.

"Select".... To choose or pick out in preference to another or others.

ten description in the '152 patent, and the prosecution history – the district court correctly construed the claims at issue. RVSI points out that the written description provides examples of the invention in which the claim elements may be satisfied by selecting a pre-existing signal pad as an index pad. RVSI also argues that the plain language of *dependent* claims 11 and 12 specifically requires that the index pads be selected from the signal pads, as disclosed in examples 1 and 2; therefore the limitations in claims 11 and 12, as dependent claims of claim 1, must be included in claim 1 as well.

Next, RVSI argues that the prosecution history of the '152 patent supports the court's claim construction. As filed, claim 1 did not contain elements 7, 8, and 9 – the explicit measurement steps. The examiner rejected claim 1 as

> being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.... Claim 1 does not clearly and definitely set forth the actual measurement of the ball grid array signal pads and the index pads, although the claim does appear to intend to claim this measurement and appears to require such measurement.

RVSI contends that this indicates that the examiner realized that it was the measurement method that was the claimed invention, not some sort of fabrication or manufacturing process as View claims.

Finally, RVSI asserts that View's dictionary definitions of the disputed terms, as extrinsic evidence, are not relevant if the context of the patent uses them differently. In this case, RVSI contends that the district court correctly decided not to interpret claim 1 of the '152 patent in light of the dictionary definitions because the intrinsic evidence adequately defined the terms. The court explicitly recognized that it was construing the disputed terms "in the context of the '152 patent." As a result, RVSI argues that the court correctly found that View's device infringes the '152 patent because contrary to View's arguments, the claims at issue do not require a specific manufacturing step.

When construing a claim, a court should first look to the intrinsic evidence, i.e., the patent itself, including the claims, the written description, and the prosecution history, if in evidence. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir. 1996). Often, the intrinsic evidence alone will resolve any ambiguity in a disputed claim term, and in such instances, reliance on extrinsic evidence is improper. *See id.* at 1583, 90 F.3d 1576, 39 USPQ2d at 1577. All claim interpretation begins with the language of the claims. *See Johnson Worldwide Assoc., Inc. v. Zebco Corp.,* 175 F.3d 985, 989, 50 USPQ2d 1607, 1609 (Fed. Cir.1999); *Bell Communications Research, Inc. v. Vitalink Communications Corp.,* 55 F.3d 615, 619–20, 34 USPQ2d 1816, 1819 (Fed.Cir.1995). View argues that by using the terms "providing ... fiducials," "correlated ... heights," "disposing ... in a prearranged pattern," and "restricting ... to a predetermined range of heights," claim 1 of the '152 patent is limited to the separate fabrication of index pads and does not encompass the use of signal pads as index pads. It is not clear to us that claim 1 is meant to be read this way, even using the ordinary and accustomed meaning of the disputed terms. We turn to the written description for clarification of these terms. *See Johnson,* 175 F.3d at 990, 50 USPQ2d at 1610 (stating that a court may look to a written description for meaning of terms at variance with the ordinary and accustomed meaning of terms if "the term or terms chosen by the patentee so deprive the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used."). The written description clearly discloses embodiments of the patent, consistent with the language used in claim 1, in which index pads are unused signal pads (which may or may not be used later), and in which index pads are separately manufactured.

█ Furthermore, beyond the language of claim 1, the plain language of claims 4, 11, and 12 support such a reading of claim 1. Claim 4 reads as follows:

A method as defined in claim 1, wherein said index pads are *produced separately from the signal pads.*

and claims 11 and 12 both begin with the following:

A method as described in claim 1, *in which the index pads are identical with the signal pads rather than separately fabricated elements* intended solely for use as fiducial pads....

View argues that the clause "rather than" in claims 11 and 12 seeks to distinguish those two claims, in which the index pads are identical with the signal pads, from claim 1 in which the index pads are separately fabricated elements. This is, however, clearly an incorrect way of reading claims 11 and 12. Claims 11 and 12 are dependent claims of claim 1 and are to be construed to incorporate by reference all the limitations of claim 1. *See* 35 U.S.C. § 112 (1994). View's construction incorrectly attributes the requirement of separately fabricated index pads to an independent claim when it is clear that a claim that depends from that independent claim does not incorporate that limitation.

Similarly, the only further limitation to claim 1 disclosed by dependent claim 4 is the limitation "wherein said index pads are produced separately from the signal pads." If claim 1 were limited to separate fabrication of index pads, claim 4 would necessarily be redundant and would add no additional limitations. This would again be an absurd construction of claim 4 as a dependent claim of claim 1.

Therefore, we hold that the district court's interpretation of the '152 patent, construing claim 1 to encompass a measurement method in which the index pads can be separately fabricated or simply selected from existing signal pads, is correct. Claim 3 adds the additional limitation to claim 1 that the index pads be metallic and opaque. Claim 12 adds the limitation to claim 1 that the index pads be identical to the signal pads, and that the coplanarity measurements are performed before grid array elements are deposited on the substrate. View makes no argument that the district court incorrectly applied its claim construction to the accused method practiced by View's Model 880 machine. We find no reversible error in the district court's application of the claims at issue to the accused method, and therefore affirm the district court's finding of infringement of claims 1, 3 and 12 of the '152 patent.

## II. Obviousness

█ The second issue on appeal is the district court's holding that the '152 patent is not invalid for obviousness under 35 U.S.C. § 103. A claimed invention is unpatentable if the differences between it and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a) (1994); *see Graham v. John Deere Co.,* 383 U.S. 1, 13–14, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). On appeal from a bench trial, the ultimate determination of whether an invention would have been obvious under 35 U.S.C. § 103 is a legal conclusion that we review *de novo. See Gentry Gallery v. Berkline Corp.,* 134 F.3d 1473, 1478, 45 USPQ2d 1498, 1502 (Fed.Cir.1998). An obviousness determination is based on underlying factual inquiries including: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness. *See Graham,* 383 U.S. at 17–18, 86 S.Ct. 684; *Miles Labs., Inc. v. Shandon Inc.,* 997 F.2d 870, 877, 27 USPQ2d 1123, 1128 (Fed.Cir.1993). The underlying factual determinations on which the legal conclusion of non-obviousness is based are reviewed for clear error. *See Gentry Gallery,* 134 F.3d at 1478, 45 USPQ2d at 1502. " 'A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite

and firm conviction that a mistake has been committed.'" *In re Graves,* 69 F.3d 1147, 1151, 36 USPQ2d 1697, 1700 (Fed. Cir.1995) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). There is a strong presumption of validity for issued patents, *see* 35 U.S.C. § 282 (1994), therefore an accused infringer who raises patent invalidity as a defense bears the burden of showing invalidity by facts supported by clear and convincing evidence. *See Monarch Knitting Mach. v. Sulzer Morat Gmbh,* 139 F.3d 877, 881, 45 USPQ2d 1977, 1981 (Fed.Cir.1998).

██ View's main argument on appeal is that if the claims are to be construed as broadly as the district court interpreted them to be (i.e., not requiring the separate manufacture of index pads) then the claimed invention would have been obvious in light of the prior art ball top coplanarity measurement methods combined with a clear suggestion by Mr. Don Banks in his December 14, 1993 letter to Steve Bilodeau, the inventor of the '152 patent, requesting that RVSI perform bottom surface metallization ("BSM") measurements on certain substrates. View argues that this letter indicates that Banks requested RVSI to use signal pads, rather than ball tops, as targets to measure substrate warpage. View contends that one of ordinary skill in the art would have found it obvious, given this instruction, to then substitute signal pads for ball tops, using the ball-top coplanarity measurement method. View asserts that the only difference between the coplanarity measurement method disclosed in the '152 patent and that known in the prior art is the selection of a target.

RVSI argues that in concluding that the method claimed in the '152 patent would not have been obvious, the district court made factual findings that the prior art does not teach the claimed methods and that those of ordinary skill in the art had failed to practice the claimed invention. The court also found that View's proposed combination of prior art fails to teach or suggest the claimed invention. RVSI also

contends that View misinterprets the contents of the Banks letter and that the letter makes no suggestion to use signal pads for coplanarity measurements.

██ We find View's arguments to be without merit. The party seeking a holding of invalidity based on a combination of two or more prior art teachings must show some motivation or suggestion to combine the teachings. *See Al–Site Corp. v. VSI Int'l, Inc.,* 174 F.3d 1308, 1323–24, 50 USPQ2d 1161, 1170 (Fed.Cir.1999); *In re Rouffet,* 149 F.3d 1350, 1355, 47 USPQ2d 1453, 1457 (Fed.Cir.1998). A suggestion or motivation to combine generally comes from the teachings of pertinent references, but it may also come from the nature of the problem or from the ordinary knowledge of one skilled in the art. *See Rouffet,* 149 F.3d at 1355, 47 USPQ2d at 1457. In reviewing the record before us, including the Banks letter, we conclude that the district court did not clearly err in its factual determinations, including its finding that the Banks letter did not teach the use of signal pads to make substrate coplanarity measurements. The district court found that that Banks letter did not disclose any step of RSVI's patented method and that the letter merely stated that "Enclosed are [bga's] to assist you in BGA inspection system development." The district court's findings are not clearly erroneous. The record does not disclose a prior art teaching or suggestion to use signal pads for coplanarity measurements, let alone a suggestion to substitute signal pads for ball-tops in the ball-top coplanarity measurements. Without such teachings, we must affirm the district court's holding that the '152 patent has not been shown to be invalid for obviousness. *See, e.g., Gambro Lundia AB v. Baxter Healthcare Corp.,* 110 F.3d 1573, 1578–79, 42 USPQ2d 1378, 1383 (Fed.Cir.1997) (absence of a suggestion to combine is dispositive of an obviousness determination).

## CONCLUSION

Because we conclude that the district court did not err in its claim interpretation

**1378**

and did not err in its application of the claims to the accused device, we affirm the finding that View's accused method infringes claims 1, 3, and 12 of the '152 patent. We also affirm the district court's holding that the '152 patent would not have been invalid on the ground of obviousness.

*AFFIRMED.*

## COSTS

Each party to bear its own costs.