**TEXAS INSTRUMENTS, INC.,**

**v.**

**LINEAR TECHNOLOGIES CORP. et al.**

**No. 2:01–CV–004–DF.**

United States District Court, E.D. Texas, Marshall Division.

Jan. 15, 2002.

Carl R. Roth, Law Office of Carl R. Roth, Marshall, Tx, for plaintiff.

Bryan F. Moore, Marta E. Gross, Laurence S. Rogers, Robert C. Morgan, Fish & Neave, New York City, Terrence J. P. Kearney, Fish & Neave, Palo Alto, CA, Dan K. Webb, George C. Lombardi, John J. Tully, Jr., Dane A. Drobny, Winston & Strawn, Chicago, IL, Damon Young, Lance Lee, Young, Pickett & Lee, Texarkana, TX, Donald Dean Bush, Bush, Craddock & Reneker LLP, Dallas, TX, Richard E. Parke, Edgar H. Haug, Robert E. Colletti, Frommer, Lawrence & Haug LLP, New York City, James N. Haltom, Patton, Haltom, Roberts, McWilliams & Greer LLP, Texarkana, TX, Jeffrey G. Randall, Cooley Godward, Palo Alto, CA, for defendants.

## MEMORANDUM ORDER

FOLSOM, District Judge.

The motion before the Court concerns the construction of three patents assigned

to Plaintiff Texas Instruments, Inc. ("TI"), U.S. Patent Nos. 4,884,674 ("674 Patent"), 5,216,613 ("613 Patent") and 6,039,168 ("168 Patent")(collectively, "the Subject Patents"). TI brings suit against Defendant Linear Technologies Corp. ("LTC") for the infringement of the three patents. Two of the patents, the '674 and '613 Patents, have been the subject of at least two prior actions. TI argues that based on construction of the claims in these patents already effectuated by other courts, there is no need for this Court to hold a *Markman* hearing to re-construe the claims of the '674 and '613 Patents. For the foregoing reasons, the Court finds TI's position not well taken, and grants Defendants' request for a *Markman* hearing (Dkt. No. 69) to fully construe the claims at issue in the three Subject Patents.

## I

## BACKGROUND

In February 1996, TI filed a complaint against Samsung America, Inc. alleging violations of 19 U.S.C. § 1337 arising from the importation, sale for importation, and sale after importation of certain electronic products that allegedly infringed the '674 and '613 Patents, among others. (Commission Opinion of the United States International Trade Commission, Applied Materials' Opposition to TI's Motion re *Markman* Hearing at 2.) The Administrative Law Judge construed several claims of the '674 Patent and ruled that the Patent was invalid. TI appealed and the ITC reversed the ALJ's findings as to summary judgment. Specifically, the ITC reversed the ALJ's construction of certain terms, then re-construed those terms and remanded the case to the ALJ to reconsider the question of invalidity in light of the new constructions. The *Samsung* Action resulted in a settlement. *Id.*

In May 1998, TI filed a patent infringement action against Hyundai Electronics Industries Company, Limited in this Court before Judge Heartfield, asserting infringement of the '674 and '613 Patents. The *Hyundai* Litigation resulted in a jury verdict in favor of TI, and settled prior to appellate review.

In January of 2001, TI brought suit against LTC in this Court, alleging infringement of the '674, '613, and '168 Patents (collectively, "the Subject Patents"). In March, 2001, LTC moved to join the third-party Defendants Applied Materials, Inc. ("Applied"), Novellus Systems, Inc. ("Novellus") and Tokyo Electron Ltd. ("Tokyo"), collectively "Third–Party Defendants." The Third–Party Defendants' motions to sever and dismiss are still pending before this Court.

Both the '674 and '613 Patents are entitled "Segmented Asynchronous Operation of an Automated Assembly Line." These two patents arose out of the same parent patent application filed on April 16, 1971, and they have identical specifications. Each is directed to methods of automating and controlling operations and transfer of workpieces between work stations during a manufacturing process. In general terms, these two patents teach that the manufacturing line is segmented into its basic units, *i.e.* the individual work stations, and the operation of the work station and the transfer between work stations is asynchronously performed under computer control. In that connection, the claims of the '674 and '613 Patents are directed to controlling transfer of workpieces between two or more work stations in such an asynchronous operation.

The '168 Patent issued on March 21, 2000, from an application that originated from the same chain of applications as did the '674 and '613 Patents. Claude Head, III, is the named inventor of all of the Subject Patents.

On May 11, 2001, TI filed a memorandum disputing the necessity of holding a hearing in accordance with *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) to construe disputed claims of the '674, '613, and '168 Patents. It is TI's contention that the previous construction of some terms of the '674 and '613 Patents in the *Hyundai* Litigation should be utilized by this Court in the present action in accordance with the principles of *stare decisis* and judicial economy. TI further suggests that some claims in the '168 Patent may also be construed through application of the determinations made by the Court in the *Hyundai* Litigation. At the status conference held in October, 2000, the Court requested that the Third–Party Defendants file memoranda setting forth their positions regarding the necessity of a *Markman* hearing. Those memoranda, in addition to TI and LTC's briefings on the issue, are considered in the following Memorandum Order.

## II

### STANDARD

■ The determination of patent infringement is a two-step process. First, the patent claims are construed to correctly determine the scope of the claims. "Claim construction" is the judicial statement of what is and is not covered by the technical terms and other words of the claims. Claim construction, including interpretation of terms of art, is a question of law reserved exclusively for the *court. Markman v. Westview Instruments, Inc.*, 517 U.S. at 383–91, 116 S.Ct. 1384. In performing this function, claims are to be construed from the vantage point of a person of ordinary skill in the art at the time of the invention. *Id.*

■ While the court construes the claim language as a matter of law, the second step in the determination of infringement is to compare the properly construed claims to the accused device. This step is performed by the fact finder, who determines whether the claim, as construed by the court, includes the accused product or method. *Laitram Corp. v. Morehouse Indus. Inc.*, 143 F.3d 1456, 1461 (Fed.Cir. 1998); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir.1993).

To preserve this distinction between court and jury, the Federal Circuit has repeatedly held that claim construction must proceed "without regard to the accused device." *Optical Disc. Corp. v. Del Mar Avionics*, 208 F.3d 1324, 1333 (Fed. Cir.2000) ("claim scope is determined without regard to the accused device"); *Young Dental Mfg. Co., Inc. v. Q3 Special Prods., Inc.*, 112 F.3d 1137, 1141 (Fed.Cir. 1997)("An infringement analysis involves two steps. First, the claim scope is determined without regard for the accused device."); *see also Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed.Cir.1991)("In 'claim construction' the words of the claims are construed independent of the accused product. . . .").

■ In construing a claim, courts must examine the intrinsic evidence, consisting of the patent's claims, its specification, and its prosecution history. *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1426 (Fed.Cir.1997); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). "Even within the intrinsic evidence, however, there is a hierarchy of analytical tools. The actual words of the claim are the controlling focus." *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed.Cir.1998). Unless the intrinsic evidence is "genuinely ambiguous," it is improper to rely on extrinsic evidence, such as expert and inventor testimony, in construing the claim. *Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 189 F.3d 1370,

1375 (Fed.Cir.1999)("Often, the intrinsic evidence alone will resolve any ambiguity in a disputed claim term, and, in such instances, reliance on extrinsic evidence is improper.") *Id.* However, extrinsic evidence may be appropriate in determining questions of claim construction when it assists the court in understanding the claim terms. *AFG Indus., Inc. v. Cardinal IG Co.,* 239 F.3d 1239, 1249 (Fed.Cir. 2001); *Pitney Bowes, Inc. v. Hewlett–Packard,* 182 F.3d 1298, 1308 (Fed.Cir. 1999); *Desper Prods. v. QSound Labs,* 157 F.3d 1325, 1333 (Fed.Cir.1998).

In 1996, the Supreme Court addressed the issue of the roles played by the court and jury in patent infringement cases when it affirmed the Federal Circuit's *Markman* opinion, *Markman v. Westview Instr., Inc.,* 52 F.3d 967 (Fed.Cir.1995). After thoroughly examining the question of whether the determination of a patent's claims is a matter of law reserved entirely for the court, or subject to the Seventh Amendment guarantee that a jury will determine the meaning of any disputed term of art about which expert testimony is offered, a unanimous Court held that claim construction is a matter of law. The Court concluded its opinion as follows:

> [W]e see the importance of uniformity in the treatment of a given patent as an independent reason to allocate all issues of construction to the court.... Uniformity would, however, be ill served by submitting issues of document construction to juries. Making them jury issues would not, to be sure, necessarily leave evidentiary questions of meaning wide open in every new court in which a patent might be litigated, for principles of issue preclusion would ordinarily foster uniformity. *Cf. Blonder–Tongue Laboratories, Inc. v. University of Ill. Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). But whereas issue preclusion could not be asserted against new and independent infringe-ment defendants even within a given jurisdiction, treating interpretive issues as purely legal will promote (though it will not guarantee) intrajurisdictional certainty through the application of *stare decisis* on those questions not yet subject to interjurisdictional uniformity under the authority of the single appeals court.

*Markman,* 517 U.S. at 391, 116 S.Ct. 1384.

### III

### DISCUSSION

The question before the Court is whether the construed claims of a patent can be applied to defendants in a new litigation concerning infringement of that patent. The answer hinges on which way the Court interprets the Supreme Court's holding in *Markman,* quoted above. TI argues that *Markman* holds that issue preclusion/collateral estoppel cannot be asserted against independent defendants, but *stare decisis* can when the interpretive issues are purely legal. (TI Reply Re Second *Markman* Hearing at 3.) As such, TI reads the *Markman* decision as permitting district courts, under principles of *stare decisis,* to adopt their prior claim constructions against independent defendants. Defendants, on the other hand, argue that TI is attempting to collaterally estop the Defendants in the instant case from fully litigating their claims, and that the *Markman* language quoted above articulates an express desire on the part of the Supreme Court to not bind different accused infringers in later proceedings, despite the purely legal nature of claim construction. (*See* Novellus Memo Re Nec. of *Markman* Hearing at 5; Tokyo Memo. Re. Nec. of *Markman* Hearing at 6; *see also Graco Children's Prods., Inc. v. Regalo Int'l,* 77 F.Supp.2d 660 (E.D.Pa.1999); *Kollmorgen Corp. v. Yaskawa Elec. Corp.,* 147 F.Supp.2d 464 (W.D.Va.2001); *KX In-*

dus., *L.P. v. PUR Water Purification Prods., Inc.*, 108 F.Supp.2d 380, 387 (D.Del.2000).) This Court must therefore determine which doctrine holds the trump card in the instant case: collateral estoppel and its related issues of due process, or the dictates of *stare decisis*.

## A. Collateral Estoppel

Defendant LTC argues that in claim construction, as in other areas, whether or not a previous decision is binding on a party turns on the doctrine of collateral estoppel. LTC argues that under collateral estoppel, where a party has not had a full and fair opportunity to litigate the issues in the prior proceeding, the prior proceeding cannot be binding on that party. (LTC Memo on Nec. of *Markman* Hearing at 2, *citing TM Patents v. Int'l Bus. Mach. Corp.* 72 F.Supp.2d 370, 375 (S.D.N.Y.1999).) LTC and Co–Defendants Applied, Novellus, and Tokyo thus argue that a new *Markman* hearing on all claims at issue in the Subject Patents is necessary.

### i. Collateral Estoppel Generally

 "Under the doctrine of issue preclusion, also called collateral estoppel, a judgment on the merits in a first suit precludes relitigation in a second suit of issues actually litigated and determined in the first suit." *Innovad Inc. v. Microsoft Corp.*, 260 F.3d 1326, 1334 (Fed.Cir.2001)(citing *In re Freeman*, 30 F.3d 1459, 1465 (Fed.Cir.1994).) However, "[i]ssue preclusion operates only if: (1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) the party against whom estoppel is invoked had a full and fair opportunity to litigate the issue in the first action." *Id; Freeman*, 30 F.3d at 1465; *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 702 (Fed.Cir.1983). The rule

of collateral estoppel is, "part of our 'deep rooted historic tradition that everyone should have his own day in court.' A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." *Martin v. Wilks*, 490 U.S. 755, 761–62, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) (citation and footnote omitted). *See also Richards v. Jefferson County, Ala.*, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996); *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

### ii. Collateral Estoppel in Patent Suits

Premised on principles of fairness, the fact that the estopped party has already had its say is an important component of the collateral estoppel doctrine. In *Blonder–Tongue Labs. Inc. v. University of Ill. Found.*, 402 U.S. 313, 349–350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the Supreme Court held that where a patent has been declared invalid in a proceeding in which the, "patentee has had a full and fair chance to litigate the validity of his patent," the patentee is collaterally estopped from relitigating the validity of the patent. *Id.* at 333, 91 S.Ct. 1434. The force and scope of this decision has caused some to determine that collateral estoppel in patent infringement suits " 'is of necessity a one-way street.' " *Allen Archery, Inc. v. Browning Mfg. Co.*, 819 F.2d 1087, 1091 (Fed.Cir.1987) (quoting 4 Donald Chisum, *Patents* § 19.02[2][e], at 19–31 (1986)). Indeed, even in those post-*Markman* cases where collateral estoppel has been applied to give binding effect to claim interpretations from a previous infringement action, collateral estoppel was invoked by the defendant against the patentee. *See TM Patents v. Int'l Bus. Mach. Corp.*, 72 F.Supp.2d 370 (S.D.N.Y.1999)(holding that where plaintiff had a full and fair opportu-

nity to litigate the meaning of claims at an earlier claim construction, that construction was binding on the plaintiff): *Abbott Labs. v. Dey*, 110 F.Supp.2d 667 (N.D.Ill.2000)(holding that the doctrine of issue preclusion barred plaintiffs from relitigating claim construction issues decided in an earlier infringement action). As is discussed below, even in the wake of *Blonder–Tongue* and the recent *Markman* decision, in some cases courts have declined to invoke issue preclusion against **plaintiffs** in second suits relitigating the same claims, where courts have found the first action insufficiently final. Tellingly, the parties have not presented to the Court, nor has the Court located, any case in which collateral estoppel was successfully invoked by a plaintiff against independent defendants.

## B. Claim Construction as a Question of Law

■ TI argues that based on general principles of judicial uniformity and economy, as well as *stare decisis*, the claims defined and construed in the '674 and '613 Patents during the *Hyundai* Litigation should be adopted and followed in this action. (TI Memo. Re. Nec. of *Markman* Hearing at 2.) TI thus calls for a *Markman* hearing of limited scope, incorporating the claims construction adopted in the *Hyundai* Litigation into the instant case. TI argues that collateral estoppel is not pertinent to the instant case because the issue of claim construction is a question of law, not a question of fact.

TI reads *Markman* as a demonstration of "the Supreme Court's strong preference for uniformity through the application of the principles of *stare decisis* to claim construction." (TI's Memo Re Nec. of *Markman* Hearing at 9.) TI likens the question of claim construction to the legal construction by a court of the terms of an insurance policy, contract, or statutory interpretation. The Federal Circuit held as much in its seminal *Markman* decision, *Markman v. Westview Instr., Inc.*, 52 F.3d 967 (Fed.Cir.1995), stating, "The appropriate analogy for interpreting patent claims is the statutory interpretation analogy. Statutory interpretation is a matter of law strictly for the court. There can be only one correct interpretation of a statue that applies to all persons." *Id* at 987. As such, TI argues that claim construction should not be allowed to differ from case to case.

### i. Independent Defendants

There are no non-district court cases that offer guidance on the question before this Court.[1] In all of the authority cited by the parties, there is not a single case where independent defendants were collaterally estopped from conducting a new claim construction. To a case, those district courts which have addressed the issue have concluded that defendants in a later proceeding involving previously construed patents should have the opportunity to brief and argue the issue of claim construction, notwithstanding any policy in favor of judicial uniformity. For example, in *Nilssen v. Motorola*, 80 F.Supp.2d 921 (N.D.Ill.2000), the district court independently construed the claims of a patent despite the fact that a judge from the same court had previously construed identical terms in another litigation against a different alleged infringer. The court stated:

It should also be added as to two of the patents in suit (the '409 and the '690 Patents) that, while the Court is respectful of Judge Kennelly's ruling construing some of the claims in those patents in *Nilssen v. Magnetek, Inc.*, 1999 WL 982966 (N.D.Ill.1999) and of the "impor-

---

1. *See* TI Memo Re. Nec. of *Markman* Hearing at 8.

tance of uniformity in the treatment of a given patent" (*Markman*, 517 U.S. at 390, 116 S.Ct. 1384, 134 L.Ed.2d 577), it is not compelled to reach the same conclusions. Those claims too will receive an independent review to ensure fairness to the parties in this litigation. *Id.* at 924 n. 4.[2] As in the instant case, the *Nilssen* Court considered the question of whether "intrajurisdictionally" construed claims should be binding on that court, and determined that fairness dictated that they could not be.

### ii. Non-estopped Plaintiffs

In fact, several cases have challenged the conventional wisdom regarding the preclusive effects of previous litigation for parties given a full and fair opportunity to litigate and found that *plaintiffs* were not subject to issue preclusion when construing claims in later suits. These decisions have largely centered on questions of plaintiffs' abilities to litigate claim construction issues to finality.

In *Graco Children's Prods., Inc. v. Regalo Int'l,* 77 F.Supp.2d 660 (E.D.Pa.1999), the court held that plaintiff was not bound by the prior claim construction because the case had settled and thus there had been no appellate review. The court made the following comment about the role played by *Markman:*

> There is no question that, by instructing courts to decide issues of claim construction in patent cases, the Court in Markman recognized the importance of uniformity in the treatment of a given

patent. However, the Court in Markman did not guarantee that collateral estoppel would apply in every case, and this Court will not extend the Supreme Court ruling to mean as much, especially where, as here, the circumstances of the instant action require that a different result be reached. Cf. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456 (Fed.Cir.1998)(reading Markman as solely addressing respective roles of judge and jury at trial level.)

*Id.* at 663. Furthermore, the *Graco* Court noted as a matter of policy that granting preclusory effect to claim construction would encourage more appeals and discourage settlement, because a plaintiff who obtained a favorable verdict might be compelled to file an appeal rather than be content with winning the lawsuit or settling the case, merely in order to correct a seemingly unduly narrow claim construction.

In *Kollmorgen Corp. v. Yaskawa Elec. Corp.,* 147 F.Supp.2d 464 (W.D.Va.2001), the court held that collateral estoppel did not apply against plaintiffs in a second case, because the first case had settled and plaintiffs had not bad the opportunity to appeal the first court's claim construction. The *Kollmorgen* Court interpreted the judicial uniformity aspects of *Markman* as mandating Federal Circuit review before any prior claim construction might have preclusive effect. The court noted, "As more than forty percent of all Markman Orders are reversed by the Federal Cir-

---

**2.** After this decision, the two cases brought by Nilssen were consolidated. Following consolidation, the presiding judge granted reconsideration of the first construction and overruled the prior construction of two terms in favor of the second. *Nielssen v. Magnetek, Inc.,* 2000 WL 369747 (N.D.Ill.2000) While TI argues that is an example of a court using a prior claim construction without giving the defendant an opportunity to present its case before

the presiding judge (TI Reply Re. *Markman* Hearing at 5), the brief Illinois decision does not offer this Court any guidance as to what actions were or were not taken by defendants during the consolidation, whether any parties contested the alteration in the construction of the two claims, or any other information that might inform the Court as to the situation in the instant case.

cuit, logic dictates that for these claim constructions to have a preclusive effect, the litigants must first have an opportunity to seek Federal Circuit review." *Id.* at 468. While this Court would not venture so far as to say that only those claim constructions that have been confirmed by the Federal Circuit are law, and with all due respect for the careful claim construction effectuated by Judge Heartfield in the *Hyundai* Litigation, the *Kollmorgen* Court makes a strong point regarding the impermanence of claim construction as a legal determination. On that point, the *Kollmorgen* Court further stated:

> Clearly, uniformity of patent claims laid the foundation for the Supreme Court's analysis. This foundation, however, presupposes that the court's construction of the patent is correct. Surely no judicial scholar would argue the Supreme Court's interests in uniformity is mutually exclusive to an interest in a proper patent claim construction. *Id.*

TI distinguishes the instant case from *Kollmorgen* because in that case, prior constructions were determined by an *extra*-jurisdictional court; in *Kollmorgen*, a West Virginia court declined to adopt the construction of a Wisconsin court. Thus *Kollmorgen* falls outside of the "intrajurisdictional" harmony praised by the Supreme Court in *Markman*. While the Court grants that this is a distinction, the *Kollmorgen* Court itself does not regard such a distinction as dispositive, basing the rationale for its unwillingness to apply previously construed claims to the case before it, even in the wake of *Markman*, on the question of fairness to the parties.

TI argues that *Kollmorgen* is distinguishable from the instant case in a second respect as well. Where the instant case concerns the application of *stare decisis*, TI argues *Kollmorgen* concerned only the question of collateral estoppel, because the *Kollmorgen* Court devoted the majority of its attentions to the question of whether the previous claim construction could be considered "final" where the previous case had settled. This objection serves only to reiterate the judicial fault line underlying the instant case, but it does little to advance the discussion.

### iii. TI's Argument

■ For its part, TI relies primarily on *KX Indus., L.P. v. PUR Water Purification Prods., Inc.*, 108 F.Supp.2d 380, 387 (D.Del.2000). The *KX* Court applied *stare decisis* to the interpretation of some claims, relying on the construction of some of those claims from a prior decision in the same court before the same judge. TI focuses on the deferral of the *KX* Court to a prior construction of the claims of the patent in suit as a demonstration that the goals of judicial uniformity articulated in *Markman* can be best followed by applying previous claim constructions in the instant case. (TI's Memo Re Nec. of *Markman* Hearing at 12.) However, the *KX* Court specifically refuted such a principle. The court's discussion of its reliance on previously construed terms reads, in its entirety, as follows:

> While the court's previous opinion does not have issue preclusive effect against [Defendant] in this case, to the extent the parties **do not raise new arguments**, the court will defer to its previous construction of the claims. See *Markman v. Westview Instr., Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)(holding that issue preclusion cannot be asserted against new defendants but noting that generally, stare decisis should promote uniformity in the claim construction of a given patent.)

*KX Indus.*, 108 F.Supp.2d at 387 (emphasis added). Furthermore, the *KX* Court went on to revisit at least one of its earlier constructions, and corrected it, finding that its, "earlier opinion in [the previous

litigation] about the scope of [Plaintiff's] disclaimer was wrong." *Id.* at 389. As the *KX* Court makes clear, both through its language and its actions, while courts *may* defer to previous claim constructions (remembering that in the *KX* action, these were previously construed claims considered by the very judge who construed them), such decisions are made on a case by case basis, at the discretion of the court.

TI further argues the *KX* is analogous to the instant case because there, like here, the defendants offered no new arguments. TI similarly argues that the *Nilssen* decision differs from the present set of facts because in *Nilssen,* new evidence was available in the second proceeding which justified a second review of the claims. However, in the instant case, Defendants have cited several deficits in the litigation of the claim construction by defendants in the *Hyundai* Litigation. (LTC's Memo. Re. Nec. of *Markman* Hearing at 8–10.) This deficits describe the areas in which Defendants contemplate introducing new arguments. Where defendants have new arguments to bring to the attention of the court, defendants' rights to fully litigate their claims are particularly persuasive. *See KX Industries,* 108 F.Supp.2d at 387 ("to the extent parties do not raise new arguments, the court will defer to its previous construction of the claims").

### iv. The Literal Scope of *Stare Decisis*

Finally, as regards the doctrine of *stare decisis,* Defendants note that it does not precisely apply, as this Court is not bound by *stare decisis* to follow the decisions of a district court judge. TI concedes this point, but argues that ordinarily in federal practice, judges of coordinate jurisdiction, sitting in cases involving identical legal questions under the same facts and circumstances, should not reconsider the decisions of each other. *See, e.g., Prack v. Weissinger,* 276 F.2d 446, 450 (4th Cir. 1960); *U.S. v. Koenig,* 290 F.2d 166, 172 (5th Cir.1961); 20 A.L.R. Fed. 13, 1974 WL 35024 (1974). The Court concurs that deference to judicial decision making, where such deference does not run afoul of fairness considerations, is ideal. Such deference, however, would be misplaced in the instant case.

## IV

### CONCLUSION

This case pits two seminal concepts of U.S. law against one another, the storied doctrine of *stare decisis,* upon which our legal system is built, and the hallowed ideal of due process, around which our system revolves. To elect one is to slight the other. This Court does not disagree that the application of previously construed claims to independent defendants may be appropriate in some cases. But while the Court is respectful of Judge Heartfield's ruling construing some of the claims in the '674 and '613 Patents, it finds no authority, either binding or persuasive, that instructs that it must utilize the claims construction reached by the court in the *Hyundai* Litigation.[3] Furthermore in

---

**3.** The scope and effect of the Supreme Court's *Markman* decision remains an open question for the Court. The Court agrees with TI that on the face of it, the Supreme Court in *Markman* does seem to distinguish questions of fact, where collateral estoppel is a leading force in second actions, from questions of law, where the entrenchment of *stare decisis* should play the leading role. However, this Court encountered no case in which a court chose to adopt TI's interpretation of the *Markman* holding. More interestingly, TI itself seems to doubt the force of the *Markman* language, instructing this Court that it "should defer," as the court did in *KX Industries,* to its earlier ruling and adopt its prior legal construction of claim terms. (TI Memo. Re. Nec. of *Markman* Hearing at 12 n. 8.) TI further exhorts the Court, "In the absence of

those cases where, as here, defendants have had no chance to litigate their claims, the application of *stare decisis* in the form of an adoption of claims construed without Defendants' participation could cause an injustice of precisely the sort that due process seeks to avoid. For the foregoing reasons, it is hereby ORDERED that Defendant's request for a *Markman* hearing, Dkt. No. 69, is GRANTED.

any new evidence, this Court is free to adopt its prior legal construction of claim terms, and should do so in this case." (TI Reply to LTC's Memo Re. *Markman* Hearing at 11; TI's Reply Re. Second *Markman* Hearing at 9.) The Court finds it significant that TI does not argue that the mandates of *stare decisis* instruct the Court that it "must defer". Furthermore, following the *KX* Court, this Court can only conclude that the question of deferring to prior claims construction is at its discretion. As such, this Court follows the path of the other district courts faced with similar quandaries, and elects to protect the due process rights of defendants to this action.