**ADVANCED MEDICAL OPTICS, INC., a Delaware corporation, Plaintiff,**

v.

**ALCON INC., a Swiss corporation, and Alcon Laboratories, Incorporated, a Delaware corporation. Defendants.**

No. CIV.A. 03–1095–KAJ.

United States District Court, D. Delaware.

March 29, 2005.

Richard L. Horowitz, Esq. and David E. Moore, Esq., Potter Anderson & Corroon LLP, Wilmington, DE, Isbester & Associates, Berkeley, CA (A. James Isbester, Gillian W. Thackray, of counsel), for plaintiff.

Josy W. Ingersoll, Melanie K. Sharp, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, Kirkland & Ellis, LLP, Los Angeles, CA (Robert G. Krupka, Erica S. Olson, of counsel), for defendants.

## MEMORANDUM OPINION

JORDAN, District Judge.

## I. INTRODUCTION

This is a patent infringement case. Presently before me are four motions filed by defendants Alcon Laboratories, Inc. and Alcon Manufacturing, Ltd. (collectively, "Alcon"), including a Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,059,765 (the " '765 patent") (Docket Item ["D.I."] 143), a Motion for Summary Judgment of Non–Infringement of the '765 Patent (D.I.146), a Motion for Summary Judgment of Invalidity of the Asserted Claims of U.S. Patent No. 5,700,-240 (the " '240 patent") (D.I.149), and a Motion for Partial Summary Judgment that Plaintiff Advanced Medical Optics, Inc. ("AMO") is Not Entitled to an Award of Lost Profits (D.I.153).

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338. For the reasons that follow, Alcon's Motion for Summary Judgment of Invalidity of the '765 patent (D.I. 143) will be denied, Alcon's Motion for Summary Judgment of Non–Infringement of the '765 Patent (D.I.146) will be granted in-part and denied in-part, Alcon's Motion for Summary Judgment of Invalidity of the Asserted Claims of the '240 patent (D.I. 149) will be denied, and Alcon's Motion for Partial Summary Judgment that AMO is

Not Entitled to an Award of Lost Profits (D.I.153) will be denied.

## II. BACKGROUND

The background related to the '240 and '765 patents is set forth in the Opinion (D.I. 238 at 1–5) construing the disputed claim terms and will not be repeated here. Nor will the claim construction rulings be repeated, except as necessary during the discussion that follows.

## III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In determining whether there is a triable issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citation omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Inds. Co., Ltd.*, 475 U.S. at 587, 106

S.Ct. 1348 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### A. Patent Validity

■ When a party challenges a patent's validity, the starting point for analyzing that challenge is the statutory presumption of validity. *See* 35 U.S.C. § 282 ("A patent shall be presumed valid."). Accordingly, "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Id.* Invalidity must be shown by clear and convincing evidence. *Robotic Vision Sys. v. View Eng'g, Inc.*, 189 F.3d 1370, 1377 (Fed.Cir.1999). This presumption of validity is never weakened, and the burden of proving invalidity does not shift from the party asserting invalidity. *Imperial Chem. Indus., PLC v. Danbury Pharmacal, Inc.*, 745 F.Supp. 998, 1004 (D.Del. 1990) (citing *ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1574–75 (Fed. Cir.1984) (other citations omitted)).

### B. Infringement

■ A patent infringement analysis involves two steps: claim construction and then the application of the construed claim to the accused process or product. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The first step, claim construction, has been held to be purely a matter of law. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed.Cir. 1998) (en banc). The second step, application of the claim to the accused product, is a fact-specific inquiry. *See Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264

F.3d 1326, 1332 (Fed.Cir.2001) (Patent infringement, "whether literal or under the doctrine of equivalents, is a question of fact."). The plaintiff, patent owner, has the burden of proving infringement by a preponderance of the evidence. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 758 (Fed.Cir.1984) (citing *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1361 (Fed.Cir.1983)). Summary judgment is appropriate in patent infringement suits when it is apparent that only one conclusion regarding infringement could be reached by a reasonable jury. *See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed.Cir.2001).

### 1. Literal Infringement and Section 112, paragraph 6

■ "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed.Cir.1995). "In order for an accused structure to literally meet a section 112, paragraph 6 means-plus-function limitation, the accused structure must either be the same as the disclosed structure or be a section 112, paragraph 6 'equivalent,' *i.e.*, (1) perform the identical function and (2) be otherwise insubstantially different with respect to structure." *Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1364 (Fed. Cir.2000) (internal citations omitted). Thus, an accused structure may literally infringe a means-plus-function claim limitation if it performs the identical function, in substantially the same way, with substantially the same result. *Id.*

### 2. The Doctrine of Equivalents and Section 112, paragraph 6

■ Under the doctrine of equivalents, an accused device infringes only if it possesses all of the limitations of the claim either literally or equivalently. *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed.Cir.

1998). The doctrine of equivalents must be applied on an element by element basis and cannot be used to broaden an element to the point where it is "effectively eliminate[d] ... in its entirety." *Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). To satisfy a claim limitation under the doctrine of equivalents, the differences between the accused device and the claim limitation must be "insubstantial." *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1338 (Fed.Cir.1998). The general test is whether the accused device performs substantially the same function in substantially the same way to achieve substantially the same result. *Alpex Computer Corp. v. Nintendo Co. Ltd.*, 102 F.3d 1214, 1222 (Fed.Cir.1996). If an accused structure does not literally infringe a means-plus-function claim limitation because it does not perform the identical function, it may nevertheless infringe under the doctrine of equivalents if it performs substantially the same function in substantially the same way, to achieve substantially the same result. *Kemco Sales*, 208 F.3d at 1364.

■ There is a difference between section 112, paragraph 6 and the doctrine of equivalents in the time focus of the equivalent analyses. *Al–Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed.Cir.1999). A structural equivalent under section 112, paragraph 6 must have been available at the time the claim issued. *Id.* Thus, an "after arising equivalent" cannot literally infringe a means-plus-function claim; it can only infringe under the doctrine of equivalents. *Id.* In other words, for there to be literal infringement under section 112, paragraph 6, an equivalent structure must have been available at the time of the patent issuance, while an equivalent under the doctrine of equivalents may arise after the patent has issued and before the time of infringement. *Id.* The two equivalence analyses may collapse into one when the

technology alleged to be equivalent was known before the patentee's invention:

> [W]here the equivalence issue does not involve later-developed technologies, but rather involves technology that predates the invention itself[,] ... a finding of non-equivalence for § 112, ¶ 6, purposes should preclude a contrary finding [of equivalence] under the doctrine of equivalents. This is because ... the structure of the accused device differs substantially from the disclosed structure, and given the prior knowledge of the technology asserted to be equivalent, it could readily have been disclosed in the patent.

*Chiuminatta,* 145 F.3d at 1311. Importantly, "[b]ecause the 'way' and 'result' prongs are the same under both the section 112, paragraph 6 test and doctrine of equivalents test, a structure failing the section 112, paragraph 6 test under either or both prongs must fail the doctrine of equivalents test for the same reason(s)." *Kemco,* 208 F.3d at 1364.

## IV. DISCUSSION

### A. Alcon's Motion for Summary Judgment of Invalidity of the '765 Patent

■ Alcon asserts that claims 1, 7, 13, and 19 of the '765 patent are invalid as indefinite because "there is no disclosed structure corresponding to the 'chamber shape means' limitation." (D.I. 144 at 5.) Essentially, Alcon's argument is that the specification does not contain a corresponding chamber shape structure to perform the "directing rising gas, within the vertically oriented chamber, toward said aspiration fluid outlet" function. (D.I. 187 at 30.) Because I rejected Alcon's proposed claim construction, its basis for this motion is undercut and, thus, the motion must be denied.

In my March 28, 2004 Memorandum Opinion, I found that the claim term "chamber shape means" was in means-plus-function format, as agreed to by the parties. (D.I. 238 at 40.) I then identified the function as "directing rising gas, within the vertically oriented chamber, toward said aspiration fluid outlet," as agreed to by the parties. (*Id.* at 40–41.) Finally, I looked to the specification and determined that the chamber shape which corresponds to the performance of this function, is "a generally circular shape and more preferably ... a toroidal shape." (*Id.* at 41–42.) Based on those determinations, it is clear that "chamber shape means" is not indefinite because the patent specification discloses a corresponding structure for carrying out the claimed function. I will therefore deny Alcon's motion for summary judgment of invalidity of the '765 patent (D.I.143).

### B. Alcon's Motion for Summary Judgment of Non–Infringement of the '765 Patent

AMO has asserted that Alcon's "Infiniti phacoemulsification system or its use to perform phacoemulsification of cataracted human lens, incorporates or will practice the claimed invention of the '765 patent" and that "[b]y manufacturing, using, and offering for sale this system and the associated disposable paks and handpieces, Alcon has infringed the '765 patent under 35 U.S.C. § 271(a)." (D.I. 25 at ¶ 14.) In this motion for summary judgment of non-infringement (D.I.146), Alcon asserts that its Infiniti Fluid Management System ("Infiniti FMS") lacks at least one limitation required by each of the asserted claims of the '765 patent. (D.I. 147 at 2.)

It is undisputed that the Inifiniti FMS "is a cassette-like component that is used with the Infiniti surgical machine to regulate fluid flow in and out of the eye during cataract surgery." (D.I. 147 at 4.) AMO has identified the pressure sensor chamber of the cassette as corresponding to the chamber limitation recited in each of the

asserted claims of the '765 patent. (*Id.;* D.I. 180 at 2.) The Infiniti console has a "recess designed to receive the cassette." (D.I. 147 at 4, Figure 4.) The console contains, *inter alia,* six gripping "fingers" that "pivot and project laterally from the sides of this recess [to] engage matching holes located on the outer edges of the cassette [to hold the cassette to the console]." (*Id.* at 4.) "Nothing overlies the Infinit's cassette when it is installed in the console." "Fluid enters the pressure sensor chamber through three openings located on a post extending into the [chamber,] ... [o]ne ... at the top of the post near the center of the chamber, while the other two ... [are] on the front of the post." (*Id.* at 6.)

Having previously construed the disputed claim terms (D.I. 238; D.I. 239), I now proceed to a "comparison of the claim to the accused device, [which, for a finding of infringement,] requires a determination that every claim limitation or its equivalent be found in the accused device [or process]." *Transclean Corp. v. Bridgewood Servs., Inc.,* 290 F.3d 1364, 1370 (Fed.Cir. 2002) (citing *Warner–Jenkinson,* 520 U.S. at 29, 117 S.Ct. 1040).

In order for Alcon to establish on summary judgment that it does not directly infringe, it must prove that it does not practice at least one of the limitations in each asserted claim of the '765 patent. To withstand summary judgment, AMO must show that, at a minimum, there is a genuine issue of material fact with regard to the elements which Alcon argues it does not practice.

### 1. "outlet disposed along the housing longitudinal axis"

 Alcon's first argument is that its Infiniti FMS lacks the "outlet[1] disposed along the housing longitudinal axis" limitation and as such, it is entitled to summary judgment on all of the asserted claims of the '765 patent. (D.I. 147 at 11.) This argument, however, is based entirely on Alcon's proposed construction that the term "along" be construed to mean "on," which I rejected during claim construction. (*See* D.I. 238 at 44–45.) Thus, under my construction, the term "along" means "through, on, over, or continuously beside or on a line or course parallel and close to," and as such, Alcon's argument must be rejected because the outlet in Alcon's device is arguably "disposed along the housing longitudinal axis." (*See* D.I. 180 at 8.) Thus, there exists a genuine issue of material fact as to whether Alcon's device includes this claim limitation.

### 2. "means, disposed in said console, for engaging and holding said housing to console"

 Alcon's second argument is that its device does not possess a "means, disposed in said console, for engaging and holding said housing to the console" and, therefore, it is entitled to summary judgment on all of the asserted claims of the '765 patent.[2] (D.I. 147 at 14.) AMO counters that there is a genuine issue of material fact with regard to whether the

---

1. Alcon correctly notes, however, that claims 7 and 13 specifically claim a "chamber outlet means being disposed along the housing longitudinal axis" and submits that "chamber outlet means" should be construed to mean "chamber outlet," rather than invoking section 112, paragraph 6. (D.I. 147 at 11 n.3.) Apparently, the parties have agreed that "chamber outlet means" and "chamber inlet means" of claim 8 should be construed to

mean "chamber outlet" and "chamber inlet," respectively. (D.I. 147 at 18 n.5 (citing D.I. 148, Ex. J at A117, Ex. K at A119).) I accept the parties' agreed upon meaning.

2. Claim 19 does not contain this means-plus-function limitation. (*See* D.I. 238 at 50–52.) Thus, Alcon's argument is applicable only to claims 1, 2, 7, 8, and 13 of the '765 patent.

Infiniti FMS contains a structure equivalent to the means-for-holding limitation in claims 1, 7, and 13.[3] (D.I. 180 at 8.)

After construing the claims, a literal infringement analysis under section 112, paragraph 6, "begins with determining whether the accused device or method performs an identical function to the one recited in the claim." *IMS Tech., Inc. v. Haas Automation, Inc.,* 206 F.3d 1422, 1430 (Fed.Cir.2000) (citing *Mas–Hamilton Group v. LaGard, Inc.,* 156 F.3d 1206, 1211–12 (Fed.Cir.1998)). "If the identical function is performed, the next step is to determine whether the accused device uses the same structure ... found in the speci-

fication or [its] equivalents." *Id.* (citing *Mas–Hamilton Group,* 156 F.3d at 1212.) These issues are questions of fact. *Id.* (citing *Odetics, Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1268–69 (Fed.Cir.1999)).

The parties have agreed that the function of this means-plus-function element is "engaging and holding the housing to the console with the longitudinal axis in a generally vertical orientation with the fluid outlet disposed below the pump" and that the corresponding structures, as shown below in Figure 4 of the '765 patent, are the frame 52, hinge 54 mounted to a face 56, the latch 62, and the lip 64. (D.I. 164 at 3, Joint Claim Construction Chart.)

---

3. AMO apparently intends to assert this argument in regard to claims 2 and 8, which contain the identical claim element at issue, because they depend from claims 1 and 7 respectively.

_FIG. 4._

The first step, then, is to determine "whether the accused device performs an identical function" to "engaging and holding the housing to the console with the longitudinal axis in a generally vertical orientation with the fluid outlet disposed below the pump." _See IMS Tech._, 206 F.3d at 1430. Alcon does not assert that

its device does not perform this identical function (*see* D.I. 147 at 14–17), and thus, for the sake of this motion, I accept that it does.

The next step is to determine whether Alcon's device uses the same structure or its equivalents. *See IMS Tech.*, 206 F.3d at 1430. Alcon argues that it is "undisputable that the Infiniti does not use a frame, hinge, lip, or latch to hold the FMS to the console." (D.I. 147 at 15.) Rather, its device uses "[a]n arrangement of pins and fingers to hold it firmly in position." (*Id.*) AMO does not dispute that Alcon's device does not use the same structure. (*See* D.I. 180 at 8–10.) AMO does assert, however, that Alcon's device "contain[s] an equivalent structure." (*Id.* at 9.)

To rebut the assertion of equivalence, Alcon argues that, in its device, the console "has a recess designed to receive the cassette ... [and][s]ix motor-driven gripping fingers that pivot and project laterally from the sides of this recess [to] engage matching holes located on the outer edges of the cassette" ... [when] "[t]he operator places the cassette in the recess, [which] forc[es] the cassette into firm contact with the console's recessed front panel." (*Id.* at 16–17.) In addition, Alcon cites the deposition testimony of Mr. Walbrink, AMO's technical expert, where he agreed that the two mechanisms function in different ways to reach the same result:

Q. Will you agree with me that the two mechanisms function in different ways to reach the same result?

A. They have a different means for accomplishing it, the same result.

Q. So they get to the same end in a different way—

A. Yes.

Q. —is that fair?

A. Yes.

(D.I. 148, Ex. G at A108, Dep. of Mr. Harold Walbrink at 129:10–18, Oct. 19, 2004.)

AMO does not assert that these structures in Alcon's device perform the identified function in substantially the same way. (*See* D.I. 180 at 8–10.) Nor, does AMO argue that Mr. Walbrink's deposition testimony was taken out of context. (*See id.*) AMO responds by arguing that Mr. Walbrink stated in his expert report that "the backing plate on the Infiniti console in conjunction with the frame of the FMS cassette, the registration pins on the console, the latches on the console and the lips on the cassette are equivalent to the structure disclosed in the patent." (D.I. 180 at 9–10.)

Even though Alcon's argument is supported by certain facts as presented in the summary judgment briefing, all of the evidence must be viewed in the light most favorable to AMO as the non-movant. So viewed, there remains a factual issue for the jury with regard to whether the structures in Alcon's device perform the identified function in substantially the same way. The Federal Circuit has admonished that "[t]he individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function." *Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1380 (Fed.Cir.2000) (quoting *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1268 (Fed.Cir.1999)). Thus, it is "impermissible [to conduct a] component-by-component analysis to determine that no reasonable jury could find structural equivalence." *Id.* Therefore, I must reject Alcon's argument on summary judgment, that its device does not contain an equivalent structure for performing the identical function of the claim element at issue.

**3. "chamber inlet means and chamber outlet means are disposed on opposite sides of said chamber"**

Alcon's third argument is that it is entitled to summary judgment of non-infringement for claims 2 and 8 because the chamber inlet and outlet in its device are not "on opposite sides." AMO spends a page and a half re-arguing claim construction before arguing that even if I accepted Alcon's proposed claim construction, Alcon's device may still infringe under the doctrine of equivalents. Alcon responds that AMO cannot establish infringement under the doctrine of equivalents "because to do so would effectively eliminate the 'on opposite sides' limitation from the claims." (D.I. 147 at 19.)

▮▮▮▮▮ AMO's claim construction arguments are made in vain, as I have construed "disposed on opposite sides of said chamber" to mean "placed across the chamber from one another on the outer portion of the chamber." (D.I. 238 at 44–45.) Under this construction, AMO does not even attempt to argue that Alcon's device literally infringes, and it is clear that it does not. (D.I. 180 at 11–13.)

I agree with Alcon, that its device does not literally infringe claims 2 and 8 because its chamber inlet is not "placed across the chamber from [the outlet] on the *outer portion* of the chamber." Rather, Alcon's chamber inlet consists of three openings, none of which are located on the outer portion of the chamber. (*See* D.I. 140 at 19, Figure 6.) Thus, Alcon does not literally practice this claim element. I do not agree, however, that this prevents AMO from asserting at trial that Alcon's device is equivalent under the doctrine of equivalents because it performs substantially the same function, substantially the same way, to achieve substantially the same result. Construing all inferences in favor of AMO, as the non-movant, this is a question of fact which must await determination by the jury at trial.

Thus, I will deny Alcon's motion for summary judgment of non-infringement of the '765 patent (D.I.146) in all respects, except that I will grant Alcon's motion to the extent that its Infiniti FMS device does not literally infringe claims 2 and 8 of the '765 patent because its chamber inlet is not literally "placed across the chamber from [the outlet] on the *outer portion* of the chamber."

**C. Alcon's Motion for Summary Judgment of Invalidity of the Asserted Claims of the '240 Patent**

In its motion for summary judgment of invalidity (D.I.149), Alcon asserts that claims 1, 3, and 5 of the '240 patent are invalid as anticipated and that claims 3 and 6 of the '240 patent are invalid as obvious.

**1. Anticipation**

▮▮▮▮▮ Anticipation requires that each and every element of the claimed invention be disclosed in a single prior art reference. *In re Paulsen,* 30 F.3d 1475, 1478–79 (Fed. Cir.1994). In other words, if any claimed element is missing from the prior art reference, it cannot anticipate the claimed invention. *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.,* 750 F.2d 1569, 1573–74 (Fed.Cir.1984).

**a. Methods Practiced By Physicians**

▮▮▮▮▮ Alcon's first argument on anticipation is that the methods practiced by physicians, specifically opthalmologists, to perform a phacoemulsification procedure, including turning the power on or off in response to a vacuum level that corresponds to an occlusion, anticipate method claims 1 and 3 of the '240 patent. (*See* D.I. 150 at 18.) AMO argues in response that Alcon's entire argument for anticipa-

tion rests upon a flawed construction of the terms in claim 1. (D.I. 181 at 9–17.)

Alcon's argument on anticipation must be rejected. I have construed "variably controlling, in response to a sensed vacuum level in the handpiece corresponding to the occluded condition of the handpiece, the ultrasonic power being provided to the handpiece," in step (f) of claim 1 to mean "the ability of the control unit to automatically change the amount of ultrasonic power, other than merely turning it on or off, being provided to the handpiece in response to a signal from the vacuum sensor indicating that a sensed rise in the vacuum of the aspiration line has reached a particular numeric value which is equal to the vacuum that exists in the aspiration line when the doctor believes he is going to have an occlusion issue." (D.I. 238 at 19–21.) It is clear that under this construction, manual methods of changing "the amount of ultrasonic power ... in response to a signal from the vacuum sensor ..." do not anticipate the automatic method claimed in step (f), which requires that the "control unit ... automatically change the amount of ultrasonic power...." Thus, because this element was not a part of the surgeon's manual technique, the methods practiced by physicians do not anticipate claims 1 and 3.[4]

### b. The Shimizu Reference

■ Alcon's second argument on anticipation is that Japanese Patent Application No. 62–111533, published on July 15, 1991, naming Kimiya Shimizu, M.D. as an inventor (the "Shimizu reference") anticipates claims 1 and 5 of the '240 patent. (D.I. 150 at 22–30.) AMO argues in response that the Shimizu reference fails to disclose

all of the elements of claims 1 and 5 of the '240 patent. (D.I. 181 at 19–32.)

Alcon's argument must be rejected because the Shimizu reference does not disclose step (f) of claim 1, as I have construed it, which is quoted above. The Shimizu reference discloses automatically turning the power on and off, but does not disclose automatically changing the power, while on, from one level to another, which is essentially what I have construed step (f) to mean. Alcon does not dispute that Shimizu does not disclose this limitation, but argues that turning the power on and off is enough. (See D.I. 150 at 27.) Alcon's argument is based on its proposed claim construction, which I have rejected. (D.I. 238 at 19–21.) Thus, it is clear that the Shimizu reference cannot anticipate claim 1. Because claim 5 also contains the "varying the ultrasonic power" limitation, which I have construed consistently with the "variably controlling" limitation of claim 1, the Shimizu reference cannot anticipate claim 5 either.[5]

### 2. Obviousness

■ A patent is invalid for obviousness under 35 U.S.C. § 103, "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). The ultimate determination of obviousness is a question of law based on underlying factual inquiries. See Rockwell Int'l Corp. v. United States, 147 F.3d 1358, 1362 (Fed. Cir.1998) (citation omitted). These inqui-

---

**4.** Because manual techniques do not anticipate claim 1, they necessarily do not anticipate claim 3, which depends from claim 1.

**5.** I need not reach the question of whether the Shimizu reference discloses the other claim limitations of claim 1, because the lack of one limitation, prevents it from being an anticipatory reference.

ries include determining (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) the impact of secondary considerations, which include objective evidence of nonobviousness such as a long-felt but unsolved need which the invention addresses, the failure of others to formulate the invention, and the commercial success of the invention. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).[6] The existence of each element of a claim somewhere in scattered prior art references does not, by itself, demonstrate obviousness. *See Moore N. Am., Inc. v. Poser Bus. Forms, Inc.*, No. Civ.A. 97–712–SLR, 2001 WL 253117, at *5 (D.Del. Mar.8, 2001). Instead, there must be a "reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success." *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1356 (Fed.Cir.1999) (internal citation omitted).

### a. Claim 3 and the Shimizu Reference

■ Alcon's first argument on obviousness, is that claim 3 of the '240 patent is obvious in light of the Shimizu reference. (D.I. 150 at 30–33.) Alcon does not rely on another prior art reference to provide the missing limitation from claim 1 as described above,[7] but rather relies on what it considers to be the knowledge of one of ordinary skill in the art. (D.I. 150 at 31 ("[o]ne of ordinary skill in the art, familiar with the techniques of practicing physicians, would know that decreasing the power is another option on how to proceed when the vacuum level rises during a phacoemulsification procedure."))

Because Alcon has not pointed to any prior art reference disclosing the missing limitation of step (f) in claim 1, nor shown that, were a reference to exist, one of ordinary skill in the art would have been motivated to combine the two, a material issue of fact remains as to whether the Shimizu reference renders claim 3 obvious. Consequently, summary judgment must be denied.

### b. Claim 6 and the Shimizu Reference

Alcon's second argument on obviousness is that claim 6 is obvious in light of the Shimizu reference in combination with either the knowledge possessed by one of ordinary skill in the art, or U.S. Patent No. 4,827,911 (the "'911 patent"). (D.I. 150 at 33–34.) AMO responds that, even if the '911 patent discloses the method of using a duty cycle to deliver ultrasonic power to a surgical tool, Alcon has not presented sufficient evidence of motivation to combine to warrant a summary judgment finding of obviousness. (D.I. 181 at 34–35.)

---

6. A district court cannot make a proper obviousness determination without undertaking an analysis under *Graham*. *See Greenwood v. Hattori Seiko Co., Ltd.*, 900 F.2d 238, 241 (Fed.Cir.1990) ("Since the proper *Graham* analysis was not made by the district court, the summary judgment of obviousness under 35 U.S.C. § 103 must be vacated."); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 872–73 (Fed.Cir.1985) ("In patent cases, the need for express *Graham* findings takes on an especially significant role because of an occasional tendency of district courts to depart from the *Graham* test ...."), *overruled on other grounds by Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059 (Fed.Cir.1998).

7. Because claim 3 depends from claim 1, each limitation of claim 1 is incorporated into claim 3. Thus, because the Shimizu reference is missing the limitation corresponding to step (f) of claim 1, by necessity it is missing the same limitation in claim 3.

I agree with AMO. Without presenting evidence of motivation to combine in its Opening Brief (D.I.150), Alcon has not established that there are no genuine issues of material fact on this point.[8] I must therefore reject Alcon's summary judgment argument that claim 6 is obvious in light of the Shimizu reference.

### D. Alcon's Motion for Partial Summary Judgment that AMO is Not Entitled to Lost Profit Damages

Alcon argues that it is entitled to summary judgment that AMO is not entitled to lost profit damages because AMO can prove neither sufficient customer demand for the patented occlusion mode feature nor the absence of an acceptable non-infringing substitute. (D.I.154.) AMO asserts that there are genuine issues of material fact in determining whether AMO is entitled to an award of lost profits, such that summary judgment is not warranted. (*See* D.I. 183 at 2.)

█ 35 U.S.C. § 284 provides:

Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

This statutory section has been construed to require an award of lost profits or other compensatory damages where the patent holder can prove such damages. *See Rite–Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1544–45 (Fed.Cir.1995). Thus, "[t]he finding of the amount of damages for patent infringement is a question of fact on which the patent owner bears the burden of proof." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,* 1 F.3d 1214, 1217 (Fed.Cir.1993) (internal citation omitted).

█ One acceptable means to establish entitlement to lost profit damages is by satisfying the four factors of the *Panduit* test. *Rite–Hite,* 56 F.3d at 1545. Under the *Panduit* test, a patentee must establish:

(1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit [he] would have made.

*Id.* (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir.1978)). "A showing under Panduit permits a court to reasonably infer that the lost profits claimed were in fact caused by the infringing sales, thus establishing a patentee's prima facie case with respect to 'but for' causation." *Id.* (citing *Kaufman Co. v. Lantech, Inc.,* 926 F.2d 1136, 1141 (Fed.Cir.1991)). "A patentee need only show that there was a reasonable probability that the sales would have been made 'but for' the infringement." *Id.* (citing *Kaufman,* 926 F.2d at 1141.) Once a patentee has shown such a reasonable probability, "[t]he burden then shifts to the infringer to show that the inference is unreasonable for some or all of the lost sales." *Id.* (citing *Kaufman,* 926 F.2d at 1141.) Under the "entire market value rule," although only one feature on a product is patented, a patent owner may still recover lost profits on the entire product if he can show demand for the patented fea-

---

**8.** Delaware Local Rule 7.1.3(c)(2) pertains to Reply Briefs and states: "The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief. . . ." It is beyond dispute that evidence of motivation to combine, if it exists, should be presented in an opening brief on the issue of obviousness, to allow the opposing party the opportunity to respond. Because Alcon has failed to do so, and evidence of motivation to combine is required for a finding of obviousness, I must reject Alcon's argument.

ture. *Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1552 (Fed.Cir.1997) (citing *Paper Converting Mach. Co. v. Magna–Graphics Corp.*, 745 F.2d 11, 22 (Fed.Cir. 1984)). An infringer's marketing material promoting the patented feature in question is evidence of demand for that feature. *Id.* at 1552–53.

█ "[T]o prove that there are no acceptable noninfringing substitutes, the patent owner must show either that (1) the purchasers in the marketplace generally were willing to buy the patented product for its advantages, or (2) the specific purchasers of the infringing product purchased on that basis." *Standard Havens Prods., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1373 (Fed.Cir.1991). "Accordingly, if purchasers are motivated to purchase because of particular features available only from the patented product, products without such features—even if otherwise competing in the marketplace—would not be acceptable noninfringing substitutes." *Id.* (internal citations omitted).

**1. Demand for the patented product**

█ Alcon asserts that AMO cannot prove that Alcon's customers purchased Alcon's machines for the patented occlusion mode feature. (D.I. 154 at 9–15.) In response, AMO cites to marketing material used by Alcon emphasizing the use and benefits of the occlusion mode in their equipment to support its contention that there was demand for the patented feature. (D.I. 183 at 16–17.) Specifically, AMO points to Alcon's marketing material, which contains a headline directed to the patented feature, stating "Occlusion Power Management for increased power modulation options," and subsequently lists the associated benefits of the occlusion mode feature. (D.I. 184, Ex. H at ALDE 021633.) Presumably related to the occlusion mode, the same piece of material states that "[m]ore control with less thermal risk puts the power you demand in

your hands." (*Id.* at ALDE 021627.) Alcon also produced a powerpoint presentation, with eight pages dedicated to the discussion of the occlusion mode and its associated benefits. (*Id.* at ALDE 053363–70.)

Alcon agrees that brochures identifying a patented feature are sufficient to show demand when there is no other evidence to dispute that inference. (D.I. 200 at 7.) Alcon argues, however, that there is "ample undisputed evidence that none of its customers purchased Alcon['s] machines for the occlusion mode feature." (*Id.*) Alcon notes that AMO's own expert testified that he did not use the occlusion mode and that the occlusion mode is "not used by most" cataract surgeons. (D.I. 154 at 10–11; D.I. 155, Ex. 22 at A347–48, Dep. of Dr. Randall Olson at 38:6–8, 53:17–20, Oct. 11, 2004.)

Far from conceding this point, AMO pointedly disputes Alcon's contention that Alcon's customers do not use the occlusion mode. (D.I. 183 at 7–11.) From the briefs before me, the only undisputed evidence offered by Alcon is that AMO's expert does not use the occlusion mode and that there are other surgeons who do not use it either. (D.I. 200 at 4–6.) That is not, however, "ample undisputed evidence that none of [Alcon's] . . . customers purchased Alcon machines for the occlusion mode feature." (*Id.* at 7.) Therefore, taking the evidence in the light most favorable to AMO, there is a genuine issue of material fact with respect to whether there was demand for the occlusion mode feature.

**2. Absence of acceptable non-infringing substitutes**

Although Alcon argues that AMO cannot establish the absence of acceptable non-infringing substitutes, Alcon does not dispute that the products it asserts to be such

do not contain the patented occlusion mode feature. (*See* D.I. 200 at 11–17.) Alcon, however, relies on the same arguments it made with respect to consumer demand to support its position with regard to non-infringing alternatives. (*Id.*) Specifically, Alcon states that "AMO must first demonstrate that consumers are actually motivated to purchase because of a particular [feature] available only from the patented product before it can begin to rule out a non-infringing product as an acceptable substitute." (*Id.* at 11 (internal quotation omitted).) Because I have already determined that there is a question of fact with respect to whether Alcon's customers demanded the occlusion mode, *supra* Part IV.D.1., and because Alcon relies on that same argument to show non-infringing alternatives (D.I. 200 at 11), there remains a question of fact with regard to this issue as well. Therefore, I will deny Alcon's motion for partial summary judgment on the issue of lost profit damages (D.I.153).

## V. CONCLUSION

Accordingly, Alcon's Motion for Summary Judgment of Invalidity of the '765 patent (D.I.143) will be denied; Alcon's Motion for Summary Judgment of Non–Infringement of the '765 Patent (D.I.146) will be denied in all respects except that it will be granted to the extent that Alcon's Infiniti FMS device does not literally infringe claims 2 and 8 of the '765 patent; Alcon's Motion for Summary Judgment of Invalidity of the Asserted Claims of the '240 patent (D.I.149) will be denied; and Alcon's Motion for Partial Summary Judgment that AMO is Not Entitled to an Award of Lost Profits (D.I.153) will be denied. An appropriate order will follow.